FILED

2025 Jul-16  AM 09:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

**ASHLIE COMBS, *et al.*,**
    PlaintiffS,

**v.**

**ETOWAH COUNTY BOARD OF EDUCATION *et al.*,**
    Defendants.

**Case No. 4:24-cv-1197-CLM**

## MEMORANDUM OPINION

Mr. and Mrs. Combs sue the Etowah County Board of Education on behalf of their minor child, C.C., after she suffered severe bullying at school. (Doc. 1). The Combs also sue four educators in their individual and official capacities: Superintendent Alan Cosby, Principal Allison Lee, Assistant Principal Ray Cargill, and Counselor Cassie Newcomb. (*Id.*). In response, all Defendants ask the court to dismiss. (Docs. 8–10). For the reasons explained below, the court **GRANTS** all motions.

## BACKGROUND

Because the Combs are defending against motions to dismiss, the court takes their pleaded facts as true. *Crowder v. Delta Air Lines, Inc.,* 963 F.3d 1197, 1202 (11th Cir. 2020).

### A. Bullying

C.C. is a student at Rainbow Middle School, a school within the Etowah County School District. Two aspects of C.C.'s life are relevant here: (1) C.C. is Catholic, and (2) C.C. has a learning disability that necessitates her participation in an individualized education program ("IEP"). The Combs allege that C.C.'s classmates bullied and harassed her on three occasions based on both characteristics.

The first bulling incident occurred in October 2022 when a student told C.C. that she would likely be removed from her home because of her Catholic faith. The same student later told C.C. that Catholics are "sinners, killers, devil worshippers, and slave owners" and encouraged C.C. to convert to "real" Christianity. (Doc. 1, p. 4). Three months later, C.C.'s classmates physically assaulted her during their Physical Education class. According to the Combs,

> those students surrounded C.C. and began kicking, slapping, scratching, and shoving her. In addition, they repeatedly ridiculed C.C. for her disability, calling her a "chicken shit," "bastard," and "coward" who was "weak." C.C. sustained severe injuries after one of the students kicked her in the back of the knee to prevent her from escaping the circle and another slammed her body and head into a concrete wall.

(*Id.*, p. 4). No adult was present during the assault. It was only after the class period ended that Mrs. Stanfield (a Rainbow Middle teacher) sent C.C. to the nurse, who in turn sent C.C. home for the day. Because of the assault, C.C. was diagnosed with a concussion, put on bed rest for several days, and received monitoring for seizure activity. The third and final incident of bullying occurred in March 2023 when a male classmate informed C.C. he knew where she lived because he followed her home from school one day.

### B. School Administration

C.C. informed Rainbow Middle's school counselor Cassie Newcomb about the bullying and harassment. Mrs. Combs also reported both the Catholic comments and the assault to the Assistance Principal of Rainbow Middle, Ray Cargill. In response, Cargill allegedly admitted that the assault was not the first incident of Rainbow Middle teachers failing to supervise their students. Mrs. Combs brought the assault back up several weeks later in an IEP meeting with Rainbow Middle's Principal (Allison Lee) and requested the school file a police report. Principle Lee assured

Mrs. Combs that Rainbow Middle prohibits fighting and responds to physical altercations with disciplinary actions.

Following the IEP meeting, Rainbow Middle filed an Alabama Uniform Incident / Offense Report about C.C.'s assault with the Rainbow City Police Department. Less than a month later, Mrs. Combs filed a second Offense Report with the Gadsden Police Department against the student that followed C.C. home. The next day, Principal Lee emailed the Combs to inform them that C.C. was being "put on homebound and would complete coursework remotely at home . . ." (*Id.*, p. 6).[1]

### C. Lawsuit

The Combs claim that the Etowah County Board of Education and its employees "witnessed, ratified, provoked, and allowed misconduct to go unpunished, and actually and proximately promulgated and/or otherwise actually or proximately caused injury and psychological and emotional distress to C.C." (*Id.*, p. 7). Based on this allegation, the Combs assert the following claims:

| Count | Claim | Defendants |
|-------|-------|------------|
| I | Negligent/ wanton hiring, training, and supervising | Cosby, Lee, Cargill, and fictitious defendants |
| II | Negligent implementation and maintenance of safe environment for students | Cosby, Lee, Cargill, Newcomb, and fictious defendants |
| III | Breach of contract | Cosby, Lee, Cargill, Newcomb, and fictious defendants |

---

[1] According to the School Board, Mrs. Combs requested in writing that C.C. switch to remote learning. (Doc. 8, fn 1).

| IV | Title VI violation | School Board, Cosby, Lee, Cargill, Newcomb, and fictious defendants |
| V | ADA Title II violation | the School Board, Cosby, Lee, Cargill, Newcomb, and fictious defendants |
| VI | Rehabilitation Act § 504 violation | the School Board, Cosby, Lee, Cargill, Newcomb, and fictious defendants |
| VII | Fourteenth Amendment violation (Due Process and Equal Protection) | the School Board, Cosby, Lee, Cargill, Newcomb, and fictious defendants |

In response, all Defendants ask the court to dismiss for failure to state any plausible claim. Rather than filing a response brief, the Combs filed an affidavit of plaintiff's counsel, Martha Lynn Sherrod. (Doc. 12). In her affidavit, Ms. Sherrod testifies that "Defendant's Motion to Dismiss . . . is in actuality a Motion for Summary Judgement and as such is premature[.]" (*Id.*, ¶ 3). But Ms. Sherrod does not (and cannot) provide facts supporting this contention; Defendants submit no matters outside of their pleadings for the court's consideration. *Jones v. Auto. Ins. of Hartford, Conn.*, 917 F.2d 1528, 1529 (11th Cir. 1990). The court thus evaluates Defendants' motions as motions to dismiss under Rule 12, not motions for summary judgment under Rule 56.

## STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* But those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555.

## ANALYSIS

The court divides its analysis by Defendant, beginning with the School Board and then turning to the individual Defendants. All claims against fictious defendants fail because fictious party practice is generally not allowed in federal court. *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010).

### 1. Etowah County Board of Education

The Combs bring four claims against the School Board: an alleged violation of Title VI of the Civil Rights Act, Title II of the ADA, Section 504 of the Rehabilitation Act, and the Fourteenth Amendment. (Doc. 1, p. 12–15). All claims against the School Board fail; the court thus **GRANTS** the Board's motion to dismiss. (Doc. 8).

A. <u>Title VI</u>: Under Title VI, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C § 2000d. The Combs never pleaded C.C.'s race, color, or national origin nor that C.C. was bullied, or that the School Board failed to intervene in bullying, because of any such characteristic. Title VI doesn't prohibit discrimination based on religion or disability—the only alleged protected characteristics C.C. possessed. So the Combs' Title VI claim fails as a matter of law and is therefore **DISMISSED WITH PREJUDICE.**

B. <u>ADA and Rehabilitation Act</u>: "Discrimination claims under the ADA and the Rehabilitation Act are governed by the same standards, and the two claims are generally discussed together. [Generally,] [t]o state a claim under Title II and § 504, a plaintiff must demonstrate (1) that he is a qualified individual with a disability; (2) that he was either excluded

from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." *J.S., III, a minor by and through J.S. Jr. v. Houstin County Bd. of Educ.*, 877 F.3d 979, 985 (11th Cir. 2017) (internal citation and quotation omitted).

Though the Eleventh Circuit has not done so, at least one district court within the Eleventh Circuit modified the usual prima-facie framework for peer-on-peer conduct claims brought against school boards. *See C.D.J. by and through Kozlowski v. Montgomery County Bd. of Educ.*, No. 2:23-cv-706, 2024 WL 3240567, *4 (M.D. Ala. June 28, 2024). In that case, the court required the plaintiff to "allege that (1) [s]he has a disability, (2) [s]he was harassed based on that disability, (3) the harassment was sufficiently severe or pervasive that it altered the condition of h[er] education and created an abusive education environment, (4) the [school board] knew about the harassment, and (5) the [school board] was deliberately indifferent to the harassment." *Id.*

Under either framework, Combs' ADA and §504 claims fail. Though the Combs claim C.C. is disabled, their complaint fails to plausibly allege any adverse action taken because of that disability. (Doc. 1, ¶ 12). While the Combs assert C.C.'s bullying was "because of her disability," they provide no factual assertions to support such a legal conclusion. (*Id.*). For instance, the Combs allege three instances of peer harassment: the Catholic comments, the assault, and the following-home incident. But the Combs never provide factual support to show any of these instances were because of C.C.'s learning disability. *See generally* (doc. 1). Nor do the Combs allege the Board or its employees failed to protect (or otherwise discriminated against), C.C. because of her disability. (*Id.*). The Combs fail to connect any adverse action to C.C.'s learning disability, so both claims against the Board fail. Because the Combs may sufficiently plead their ADA and §504 claims with more detail, the court **DISMISSES** these claims **WITHOUT PREJUDICE.**

C. <u>Fourteenth Amendment</u>: The Combs next allege violations of the Fourteenth Amendment's Equal Protection Clause, Substantive Due Process, and Procedural Due Process. (Doc. 1, p. 16). The Combs' Fourteenth Amendment claim fails on all theories because the Board is protected by *Monell v. Dep't of Soc. Services*. 436 U.S. 658 (1978). Under *Monell*, "a local government [including a school board] may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694.

To overcome *Monell* and assert constitutional claims against the Board, the Combs must sufficiently allege that C.C. "has been deprived of constitutional rights by either an express policy or a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom and usage with the force of law." *Cuesta v. Sch. Bd. of Miami-Dade County, Fla.*, 285 F.3d 962, 966 (11th Cir. 2002) (internal quotation omitted). "Even in the absence of an express policy or custom a local government body can be held liable for a single act or decision of a municipal official with final policymaking authority in the area of the act or decision." *Id.* at 968 (internal quotation omitted).

The Combs fail to allege the Board maintained an official policy or unofficial custom that caused C.C. constitutional harm. The Combs also fail to assert that any individual involved had final policymaking authority or what decisions that individual made that constitutionally harmed C.C. To overcome *Monell*, the Combs must plead either an official School Board policy, an unofficial Board custom, or *specific* acts done by *specific* Defendants possessing a *specific* type of authority that caused C.C. the deprivation of a *specific* constitutional right. Conclusory allegations that "Defendants" harmed C.C. is insufficient to plausibly allege municipal liability. *See* (doc 1, p. 16–17).

Because the Combs could overcome *Monell* with more artful pleading, the court **DISMISSES** their Fourteenth Amendment claim against the Board **WITHOUT PREJUDICE**.

### 2. Individual Defendants

On top of the School Board, the Combs sue Superintendent Alan Cosby, Principal Allison Lee, Assistant Principal Ray Cargill, and Counselor Cassie Newcomb in their personal and official capacities. The Combs pursue state and federal law claims against these Defendants. But as explained below (and as explained above regarding the Board) all federal claims fail. The court therefore defers evaluating the Combs' state-law claims until the Combs sufficiently plead federal jurisdiction.

A. <u>Official Capacity</u>: As the individual Defendants highlight, "[i]n contrast to individual capacity suits, when an officer is sued under Section 1983 in his or her official capacity, the suit is simply 'another way of pleading an action against an entity of which an officer is an agent.' . . . Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly (provided, of course, that the public entity receives notice and an opportunity to respond)." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (internal citations omitted). Because the individual Defendants were all employed by their co-defendant, the Etowah County Board of Education, the Combs' official capacity claims are redundant. The court thus **DISMISSES** such claims **WITHOUT PREJUDICE**.

B. <u>Personal Capacity</u>: Having dismissed all official capacity claims, the court turns its attention to the Combs' four federal claims against the individual Defendants.

o *Title VI*: The Combs' Title VI claim against Superintendent Cosby, Principal Lee, Assistant Principal Cargill, and Counselor Newcomb fail for the same reasons Title VI fails against the School Board:

the complaint contains no facts showing any individual Defendant treated C.C. a certain way because of her race, color, or national origin. Even if the complaint did allege race or national origin-based discrimination, Title VI doesn't provide a cause of action against individuals. *Shotz v. City of Plantation*, 344 F.3d 1161, 1170 (11th Cir. 2003). So the court **DISMISSES WITH PREJUDICE** the Combs' Title VI claim in its entirety.

  o   *ADA and Rehabilitation Act*: Similarly, the Combs' ADA and §504 claims fail against the individual Defendants because "there is no individual capacity liability under Title II of the ADA or RA." *Badillo v. Thorpe*, 158 Fed. Appx. 208, 211 (11th Cir. 2005). The Combs' ADA and the Rehabilitation Act claims against the individual Defendants in their personal capacities thus fail and are **DISMISSED WITH PREJUDICE**.

  o   *Fourteenth Amendment*: Finally, the court **DISMISSES** the Combs' Fourteenth Amendment claim **WITHOUT PREJUDICE**. In Alabama, principals, vice principals, superintendents, and counselors are state employees that may benefit from qualified immunity. *See Hill v. Cundiff*, 797 F.3d 948, 978–80 (11th Cir. 2015); *see also T.R. by and through Brock v. Lamar Cnty. Bd. of Educ.*, 25 F.4th 877 (11th Cir. 2022). State officials sued in their individual capacities for violating federal law are generally shielded from liability insofar as their conduct occurred while performing a discretionary function and didn't violate clearly established law of which a reasonable person would've known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

All complained of actions (supervising students, counseling students, disciplining students, responding to parental complaints, creating and implementing school policies, reporting school altercations *etc.*) are within the discretionary authority of principals, vice principals, superintendents, and counselors. *Hinson v. Bias*, 927 F.3d 1103, 1116 (11th Cir.) ("The term 'discretionary authority' covers 'all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority.'")

(internal citation omitted). And the Combs fail to plausibly allege a deprivation of C.C.'s constitutional rights. According to the Combs,

> C.C. suffered peer-based harassment and bullying on the basis of her disability and religion. The harassment and bullying were sufficiently severe or pervasive to alter the condition of C.C.'s education and create an abusive educational environment. Indeed, C.C. was deprived of property without due process when she was forced to go on homebound where she completed coursework at home through the online learning program Odysseyware. Defendants had actual notice of the peer-based harassment and bullying of C.C. or would have gained such notice if they had exercised due and proper diligence. Defendants, with deliberate indifference, failed or refused to respond to the peer-based harassment and bullying of C.C. Indeed, despite multiple reports of the peer-based harassment and bullying, Defendants not only did nothing to prevent further harm to C.C. but also blamed her for her peers' conduct. Defendants' behavior was so egregious as to shock the conscience in that the conduct was brutal and offensive to human dignity so as to violate C.C.'s right to substantive due process. There is a causal connection between Defendants' conduct (acts and/or omissions) and the deprivation of C.C.'s Constitutional rights. As a direct and proximate result of Defendants' acts and/or omissions in violation of C.C.'s federal civil rights, C.C. has suffered emotional, physical, and financial injuries.

(Doc. 1, ¶¶ 61–66).

Though the Combs use language associated with Fourteenth Amendment claims, the complaint fails to allege any facts to support such language. Put differently, the Combs never explain the who, what, or how of the alleged constitutional infringement. The complaint doesn't attribute any action to Superintendent Cosby, Principal Lee, Assistant

Principal Cargill, or Counselor Newcom that constitutionally harmed C.C. The Combs also don't plead which of C.C.'s constitutional rights Defendants allegedly infringed on. Because of the discretionary nature of all involved actions and the failure to plausibly allege constitutional harm, the individual Defendants all benefit from qualified immunity on the Combs' Fourteenth Amendment claims.

## CONCLUSION

To sum up, the Combs fail to plausibly state any federal claim against the Board, Superintendent Cosby, Principal Lee, Assistant Principal Cargill, or Counselor Newcomb. The court thus defers ruling on any state-law claim until the Combs sufficiently plead a federal claim to invoke federal jurisdiction. The court **DISMISSES WITHOUT PREJUDICE** the following federal claims:

- ADA violation against the Board,
- Rehabilitation Act violation against the Board,
- Fourteenth Amendment violation against the Board,
- All official capacity claims against the individuals, and
- Fourteenth amendment violation against the individuals in their personal capacities.

The court will allow the Combs one chance to replead these claims. If the Combs wish to file an amended complaint, they must do so on or before August 1, 2025.

All other federal claims fail as a matter of law and are therefore **DISMISSED WITH PREJUDICE**.

**Done** and **Ordered** on **July 16, 2025.**

_____

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE